Case number 20-3101 Luther Johnson v. Lisa Peterson et al. Oral argument not to exceed 15 minutes per side. Mr. Davey for the appellant. Well, we welcome you both to the United States Court of Appeals for the Sixth Circuit virtually and thank you for arguing that way. Mr. Davey, do you have you reserved some rebuttal time? Your Honor, I've reserved three minutes for rebuttal. That's just fine. Proceed. Thank you so much. Your Honor, may it please the court. Mr. Johnson has stated a claim because he has not received treatment for an objectively serious medical condition and is suffering injuries and symptoms as a result of that denial. If the cure is available, it would address his issues and they simply won't give it to him because of the cost of the treatment. I want to make three main points today. The first is that evaluation is not a requirement for treatment. It's what they have done has merely apprised them of what stage of the condition he is in, but they have not treated the condition at all. Second, even if they have treated him pursuant to a statewide, even if they have declined to treat him pursuant to a statewide protocol about monitoring, that protocol can't immunize them as to, in particular, his individual claim. The third is that qualified immunity can't apply in this case for a variety of reasons, most notably the stage of the proceedings, the impracticality as a matter of jurisprudence, and the fact-specific questions that would go into that. As a result, this court should reverse and remand for- Can I ask you a preliminary question? We had another case called Mann, and there were some questions raised at argument, or there were some issues that came up at argument about whether the state had changed its protocol, whether that plaintiff had been getting treatment, and it ended up essentially that we remanded that case. Does that affect what is going on here in terms of what the state protocol might be or whether it's changed? I'll say three things about that, Your Honor. First, I communicated with my client as recently as yesterday, and he has not received treatment. My understanding is that in Mann, the parties represented at argument that under the new protocol that the plaintiffs in that case had been starting to get treatment or qualified for treatment or something like that, and so my client not receiving treatment even if the protocol has changed, there's not a mootness issue in the same way. I wouldn't conceive mootness even if there was, but there just isn't. The second is that with respect to representations at argument, that's just outside of the record, and I think it would still counsel in favor of remanding for the district court to consider any such new evidence such as applications of a new protocol in the first instance. The third is I actually do think Mann is pretty instructive here for several reasons. The first is that Mann specifically remanded for consideration of an individual claim, in particular qualified immunity and the application of the protocol to the individuals in that case. I know that Mann was per curiam and not reported, but I think that it's persuasive in terms of what this court might consider doing, and so I do think that this court should look to Mann for how to deal with this case as well. I would also add on that subject, I've seen a version of the purportedly new protocol that was obtained via public records, and with respect to the key circumstances of denying treatment for people in Mr. Johnson's condition and him specifically, it looks to be the same to me. That's, again, irrelevant. The district court should consider that on remand in the first instance, but I don't think, to answer your question, I don't think that that changes anything though. So your understanding is that even under the new protocol, I understand this is not necessarily in the record, but I'm just curious, whatever F, whatever stage your client is in, he still wouldn't qualify for a treatment? Well, so that actually raises a different point. So yes is the short answer, but the longer answer is that, you know, one of the other things that's going on here is that I don't even think the monitoring has been adequate. The record reflects that Mr. Johnson has received two biopsies like a decade apart, and has received a little bit of blood work in the interim, and, you know, there are cases out there, including Cimenti out of Pennsylvania, Stafford, you know, that suggests that the monitoring that he has received is itself inadequate. And so it's actually possible, especially given the variances in how this disease progresses, it's actually possible that his disease has progressed even further, and maybe he would qualify even under a very restrictive protocol. But again, that's a fact question that I think the district court should consider in the first instance on remand. With respect to, I do think that that's a good moment to pivot back to the evaluation versus, you know, treatment. Evaluation, such as biopsies, such as blood work, doesn't treat a condition at all. If you look at a dictionary definition, for example, it talks about how we, if we agree with you, are we disagreeing with the 11th circuit in Hoffer? And I understand that there was an extensive record in that case, or there was a PI, but there's some general statements in there about evaluation or about that essentially being treatment. Would we have to part ways with them? So from a reasoning perspective, I think that it depends on how you write it. But from a fact perspective, I will point out one key difference between Hoffer and the circumstances here. Hoffer, the Florida protocol at issue in Hoffer treated everyone down to F2. Mr. Johnson, the record reflects, has fibrosis level two, at least as of 2016. Again, possibly he's more serious as of now. But under the Hoffer reasoning and the decision, I actually don't know that the Hoffer court would uphold the Ohio protocol, even from a facial challenge. Well, I understand that, and I understand that there's one, I think there's one stage earlier, Ohio versus Florida, but I'm wondering about, there's some very specific language in that opinion about this, that monitoring essentially is treatment, regardless of what, so maybe they're just monitoring you to see if you get to F2 as opposed to F3. But that language, it seems to me is inconsistent with just as a legal matter with your position on what treatment amounts to. Is that right? I'm not sure. I think it depends on exactly the language, but I'll say a couple things. The first is that this court's decisions in several other cases involving not hep C, if you look at Lamar, if you look at Dominguez, if you look at Comstock, all of those stand for the proposition that monitoring or evaluation that leads to a denial of treatment can state a claim. And the results of not treating someone, even pursuant to evaluation, is that you may state an eighth amendment claim. And I think that those are probably more instructive here. With respect to monitoring treatment, that language. And again, I think it's possible that that decision is maybe a little bit too restrictive, but I would also point out that again, as you noted, there was a huge fact record in that case, there was discovery, there was all of that. As alleged here, Mr. Johnson has received very little monitoring and evaluation even as is. And so I think even if you accept this proposition, and I'm not saying that I do, but even if you accept this proposition that evaluation, maybe a course of care, something can be enough. I think that as a matter of, especially on the pleadings, there's absolutely no reason to infer that Mr. Johnson has received that amount of monitoring here. And so for that reason, I think even if you think of it as a inadequate case. So your argument is he's alleged so little monitoring that it amounts to no honor. I think so first, once you start talking about like, it's not enough, if monitoring is treatment, and it's not enough monitoring, then we're talking about adequacy. And when we talk about adequacy, that's a kind of a tough call. That's a tough road for your client to I agree or whatever the rest of that analogy is. No, I agree, Your Honor. And I want to be very and that monitoring is not treatment. And again, I was going to point you to the even if you want to get, you know, very basic to the dictionary definition, Miriam Webster's defines treatment as something that prevents treat. We're not talking about statute here, right? Some of our cases say medical care. They don't all say treatment. So I don't know that we need to define treatment. Like, is it medical care? We could call it that. Yeah. Well, I guess my answer, I guess my answer to this is as follows. Mr. Johnson has alleged that he is suffering a number of physical symptoms and injuries as a result of not having been treated. They include at page three of the complaint, sleep disturbances, mental confusion, sluggishness, weight gain. At page four, he said that it affects his health. And he notes a grievance in which he's filed that that includes even new symptoms, and nothing that the state has done has dealt with any of those symptoms. And from an Eighth Amendment perspective, you know, a denial of treatment is something that where where there's an objectively serious medical condition, which everyone can see that hepatitis C is where you're suffering these these physical injuries and this and this harm. And there's no treatment at all that addresses those. That's that's a paradigmatic Eighth Amendment claim under under the holdings of the protocol, though. So like, I kind of wondering whether you've sued the right people. So these doctors are operating pursuant to the state protocol. That's what the complaint says. It seems to me that you have a problem with the state protocol. I'm not sure that the doctors could deviate from the state protocol. Like, could they just like, give out, put him on this do like, won't they lose their jobs if they do that? Um, your honor, I think, should you have brought a challenge to the state protocol? Your Honor, I have a couple of responses to that. I think that's a good question. But I think my first answer to that is that a lot of those are sort of fact specific questions that that should be explored on remand. I mean, the question of exactly what the doctors could do, how much discretion they have under the protocol, whether or not, you know, going up that whether or not they've gone up the chain, asked for more funding, you know, the Atkins decision of this court, which is the other most notable recent Hep C decision. And again, that was after a bench trial. And after discovery, they credited attempts by the defendants in that case to seek more funding to treat more people. All of that is stuff that could come out in discovery that would that would shed a lot more light on this. And my second answer, deliberately indifferent. This is my question. How can you a doctor be deliberately indifferent for giving the treatment that the care that this date tells them to give? So I think that what what that gets at is my understanding of Atkins, which is the everyone sort of acknowledges that not treating an objectively serious condition is a paradigmatic eighth amendment claim. And it my sort of read of Atkins is that, of course, if you take into account resource constraints and stuff like that, it can mitigate what is otherwise, again, paradigmatic deliberate indifference. And so they recognize that it stated a claim, it went through discovery went through summary judgment went to a bench trial. And ultimately, the court decided that in reference to all these other things, including against sort of state of mind, for the subjective prong of the of the record, there's not actually delivered indifference. I don't think part of that was related to the fact that there was a new protocol authorized very shortly before trial. Correct? Yes, that's also correct. Yes. And again, I think that that counsels, again, a remand for considering application of the new protocol in the first instance by the district court. The last thing I'll say about this before, because I recognize that I'm, I'm in the red. The last thing that I'll say about this is the, the protocol at issue, Judge Larson, I think your question would make a lot more sense if it had been upheld against a facial challenge. It hasn't been. And so if there's an avowedly constitutional protocol, I think that's a more interesting question, but there's just not here. And second, even if there were, it's possible that he would still have an individual claim as the main court recognized, it's possible that he might have a viable individual claim for, for the delay of treatment, for the injuries that he's suffered in the meantime, he would have a viable individual claim regardless. And so unless you have any further questions at the moment, I'll see you on rebuttal. We thank you for your arguments, Mr. Blakely. Good morning, your honors. May it please the court. Johnson's delivered indifference claim fails for two reasons. First, he's challenging the adequacy of this treatment, which means he has to show that the treatment was so treatment at all. And second, Johnson cannot make that showing as a matter of law. To my first point, my friend hangs his hat on the argument that Johnson was completely denied any form of treatment, but that argument is belied by the allegations in the complaint. As the district court noted on page ID two Oh two Johnson's complaint, his very own allegations show that he has received treatment specifically pages three through five of the complaint explain how the prison medical staff conducted physical examination. What do we do with these cases? Um, that, I mean, look, Hoffer and Atkins, they both had considerable records. There was a PI, there was a trial, and we just don't have a record here. I mean, even man, we sent that one back. Um, doesn't that suggest that you get past the 12 B6 in these cases? Just generally? No, Your Honor. Two points. The first point is going to be about the procedural posture generally. And then the second point is going to be why the district court was correct to grant the state's motion for judgment on the pleading. So to the first point, it's not uncommon for eighth amendment delivered indifference claims to be dismissed prior to a motion for summary judgment. And that's true within the circuit as well as outside the circuit. For example, just three months ago, this court in Williams versus Olette affirmed the district court's dismissal of an eighth amendment deliberate indifference claim at the screening stage. And the year before the 10th circuit did the same thing on a deliberate indifference claim on a motion to dismiss and the year before that eight circuits. So from a general perspective, not every eighth amendment deliberate indifference claim gets to the motion for summary judgment. Now with regards to this case, the reason why Johnson's claim doesn't get there is because he affirmatively pleaded facts showing he has received treatment. And that's important. Here's the problem. Don't you have to take the inferences in the allegations of the complaint in favor of the plaintiff. And he alleges that what Johnson received was an administrative review, but not a medical treatment. That's true. But we also know that unwarranted factual inferences are not entitled to a presumption of truth. And we know by looking at precedent that he has received treatment and we can look at Supreme court precedent, sixth circuit precedent or out of circuit precedent. So let's start with Supreme court precedent and Estelle, the inmate there had a back injury and the treatment he sought wasn't x-ray. Now we all know that an x-ray is a diagnostic tool. It in no way can cure an individual of their disease, but the Supreme court didn't say you don't have a claim because the eighth amendment's not even implicated because an x-ray is not treatment. The Supreme court said, yes, this is part of the continuous diagnosing and evaluating of an inmate. Here's the problem. I know you cite several of those cases that arise in completely different circumstances, but here we're in this objective, subjective, deliberate indifference category where we are talking about an illness that has been recognized to be objectively a serious condition, right? Absolutely right. And so we're not talking about somebody who the doctor says, I think you've hurt your leg, but I think rest will take care of it, which is one of the cases that you recommend. That is the treatment based on a medical determination by the doctor. The plaintiff here complains that no medical determination or activity has been undertaken. That there has been a measuring against an administrative requirement. So why, since you have to infer in the plaintiff's favor at this stage, and we're only talking about this motion to dismiss state, why doesn't that state a claim that at least goes forward as did Hoffer and, and as did the other monitoring claims, Lamar, Dominguez, Comstock in the sixth circuit. Your honor, we embrace Johnson's allegations and it's his allegations that prove our point. He specifically requested two types of treatment. One, he requested the antiviral medication. He also requested the biopsy. And I think it's important to acknowledge what a biopsy is. It's, it's much more than taping of a toe, for example, which is what this Gordon Allspaw said constituted treatment. A biopsy, it's a surgical procedure where a small portion of the liver is removed so that can be examined underneath a microscope. That constitutes treatment. It's a surgical procedure. Let me ask you why that constitutes treatment if the plaintiff alleges that it's not treatment because the only thing that it is for is meeting a specified provision of the rule. And he could have stage two in the liver, or he could have stage one in the liver, and yet none of the other symptoms or medical harms that are alleged by in this complaint are being looked at the ammonia levels, the sleeplessness, the other, the damage to other organs. I mean, it seems to me that the allegations of this complaint is that yes, you did what was medical treatment. So that's actually not true. Your honor, the Johnson's allegations is not that they biopsied his liver because they had to underneath the guidelines. Johnson asked for a biopsy and the prison medical staff worked with them. They said, you know what, we will biopsy your liver. We're standing at the ready to prescribe you the antiviral medication. If the biopsy results come back as stage three. And if we continue the blood work, continue the monitoring, if something changes, we will prescribe you that cure, but the eighth amendment does not require a cure. It requires adequate care. And so again, the prison medical staff didn't check boxes. They were working with Johnson to treat his condition. And that's really important because it elevates the standard. The standard then is, does that treatment, is it so woefully inadequate, so grossly incompetent that it amounts to no treatment at all? And the answer is no. And judge Helmick did a great job below and analyzing all of these claims. And he acknowledged the seriousness of hepatitis C. And we don't want to challenge that one bit, but the fact is that under sixth circuit precedent, that that standard of no treatment at all, once treatment is given is extremely high. And Johnson affirmatively pleaded facts that disprove his claim. And to address my judge Larson, you brought up, did they even sue the right individuals? Another question is, did they sue in the right place? It's easy to forget, but the constitution is not the only source of American law under Ohio law. Johnson could have brought a state tort medical malpractice claim in the Ohio court of claims. And so just because the prison medical staff didn't violate the eighth amendment doesn't mean Johnson doesn't have a claim for relief. And to borrow a line from justice Scalia, when you have that alternative form of state remedy court should be wary of fortifying the eighth amendment. And this court has reaffirmed that it says time and time again, it refuses to constitutionalize state tort law claims when treatment is given. That's a situation we are in here. Another point that my friend brought up is that Johnson is seeking a cure and his deliberate indifference claim should go forward because he has not received that cure. But again, under the eighth amendment, adequate care without cure is constitutional. And then I from the 11th circuit. And again, that did come up in a different procedural posture. But as I noted earlier, it's not uncommon for cases to be dismissed prior to a motion for summary judgment, but they were very explicit in terms of monitoring, diagnosing, and evaluating the condition, especially inmates with hepatitis C, that will often be sufficient to meet the constitutionally minimum requirements of the eighth amendment. So when we look at this from a whole, yes, help me understand how you differentiate all the other cases that got beyond the motion to dismiss level. Hoffer was a beyond the motion to dismiss. Adkins in our own court was beyond the motion to dismiss what what makes your case distinct from our own case law. So Adkins is really insightful here. What was discovered at trial was that the prison implemented a policy of continuous diagnosing, monitoring and evaluating that information wasn't revealed until trial. Johnson here affirmatively pleaded those facts. And so there's no reason to venture into discovery when we already know what the prison is doing. They are continuously monitoring jobs and they are working with them. They provided the biopsy which he requested. Adkins rely on the fact that a new protocol had been authorized very shortly before trial. My friend protocol that was in fact examined at trial. To the extent that that is true, Your Honor, that's the protocol that is being implemented here. That's the protocol that Johnson alleged is being implemented. And as my friend acknowledged, as as a man, it made a difference that there was a change in the protocol that is irrelevant here. We know the facts and we know that the treatment provided, it's not so grossly incompetent to to no treatment. Again, Johnson acknowledges that the prison will prescribe him antiviral medication if and when his condition becomes severe. Stage three. And it's not. So your argument is the existing protocol that has authorized his his liver biopsy once every 10 years is adequate treatment is a treatment plan. No, Your Honor, we're we're arguing that the prison has implemented a policy where they are continuously monitoring his condition. Net monitoring is monitoring with a purpose, right? So it's not just the biopsies. Johnson alleges that his ammonia levels have stabilized. The prison medical staff is analyzing his platelet ratio indices. All of these are benchmarkers. And as soon as a certain benchmarker is hit, that can trigger the advanced form of treatment. He's already receiving a treatment currently. And so the difference here is, is he constitutionally entitled to a cure for his hepatitis C? And the answer is no. That's ultimately the what the fundamental flaw with Johnson's argument is. I was hoping to clear something up. So you said earlier that he asked for a biopsy and got one. Judge Strange says the biopsies are authorized every 10 years. No, I'm sorry. He only got them every 10 years. And it was because he filed a number of grievances requesting the biopsy. So so okay, so I'm just trying to plot it after pushing. He got it after pushing. Okay, that's what I that's what I wanted to know. Counsel, and maybe you can react to this. I was thinking about the COVID vaccine. So it seems like the problem here is we're, we've got a drug, I assume the drug is expensive. They're rationing the drug. I think that's what your, your counsel on the other side would say. And that's not okay. But what about COVID vaccine? So presumably every single prisoner would like to right now they're living in very close quarters. What if the prison said, we're going to follow CDC guidelines. And let's say the CDC guidelines just say, we're allocating it based on age. If you're 90 8070 6050 the 20 year old in prison won't get the vaccine. But the 20 year old needs it. Everybody needs it. Is that constitutional just because the government's allowed to ration? Or does the 20 year old in prison get the vaccine but the 20 year old on the outside doesn't? It is constitutional and because this court and Atkins said so. The question there was, is it okay for a court to have treatment guidelines based on priority and all experts who testified both for the defendant and the plaintiff agreed, implementing treatment guidelines based on a priority method is constitutional. So long as you're already providing care, because then the question is, is it so woefully inadequate that it amounts to no care at all. And when you're in that realm of already providing care, the eighth amendment doesn't prohibit you from taking cost concerned and consideration from considering age, all these things that are on the would raise a different question. But again, we're not in that situation here. And I think the COVID hypothetical is really apt right here, because COVID is very different from hepatitis C and COVID, you can be diagnosed. And within one month, you can be on, you can be in the hospital on a ventilator fighting for your life. As this point point, as this court pointed out in Atkins, however, hepatitis C, it's slowly progressing. Some individuals won't experience the severe scarring for 20 to 30 years. And we know because Johnson alleged these facts, he was diagnosed in and over the last 20 years, he's only progressed to that stage two, mild to moderate scarring. And so when you take that into perspective, when the when the prison medical staff said, Yes, we're going to biopsy you, we're going to continually monitor you. But we're going to stand at the ready to prescribe that medication that doesn't amount to no treatment at all, because it's not in that life threatening situation that say the COVID patient is. So unless the court has any questions, I just again, I want to acknowledge Judge Helmick's opinion here is very well reasoned, and it's correct. And that's why this court should affirm it. Thank you. Mr. Daigle. Your Honors, I just want to make a couple of points on rebuttal. The first is that my colleague on the other side, it raised a number of fact inferences that he is that he is inviting you to construe against Mr. Johnson against the posture. The first is that he talks about, you know, the biopsy as a surgical procedure, you know, invasive, whatever, a biopsy does not treat hepatitis C, it does not treat any of the symptoms that Mr. Johnson alleged that he's experiencing, it does not treat surgical, it does not treat liver scarring, it does not decrease his risk of cancer or cirrhosis or any of the other serious symptoms and physical effects that he's experiencing. And so that's my first point. My second point is that I think as a number of you have illustrated in your questioning, both of my colleague and myself, the posture here really does counsel, reversing and remanding a number of questions got at facts that I think would need to be developed through discovery, including, you know, the expense of the drug, as Judge Larson alluded to, the scope of the scarring in his liver, as my colleague talked about, I mean, you know, he may be at F2, he may be at F3, even within the five gradations, F0 to F4, there are wide variances among people in terms of the scarring and the effect that it has on their liver. And, you know, it's possible that he has a more serious case than other people at F2, it's possible he doesn't. But all of those are fact questions that are the kind of things that we would want to get in discovery, possibly expert medical opinions. And so the posture counsels against here, affirming as well. And the third point is that, again, my colleague brought up, you know, a couple of Eighth Amendment decisions, I guess that affirmed dismissals of complaints at the at the pleading stage. It sounds like one of them might have been similarly a pro se complaint that was maybe screened out by the staff attorney's office. But the vast majority of all of the precedent only affirmed summary judgment after discovery and after in reference to facts in the record that are just not present here. And I think Atkins and Mann, which are the two most on point cases in this circuit, which again, Atkins had a discovery, a bench trial, findings of fact, Mann, the court in the absence of those things, reversed and remanded for the district court to consider in the first instance. I think both of those cases counsel reversing and remanding here. If you have any other questions, I'm happy to take them. But otherwise, I'm happy to rest. Did Mann come up as a 12B6? Mann, yes, came up off of a 12B6. Yes. One other similarity, I think that that I want to note to Mann, and that actually gets at one of Judge Larson's questions too, while I'm while I'm here. The plaintiffs in Mann were pro se below and were represented on appeal for the first time. And the same thing happened here. Mr. Johnson wrote it himself, he was pro se. And I think, you know, the fact that these, these complaints were pro se. And, and, you know, again, especially where the defense is advocating construing fact inferences against a pro se prison civil rights plaintiff, you know, this court's precedents are clear that you should, you know, be solicitous of the pro se prisoner plaintiffs. And again, as in Mann, which is very, very similar, I think this court should should reverse and remand for consideration by the district court in the first instance. Well, we thank you both for your briefing and your arguments. The case will be taken under advisement and an opinion will be issued in due course. You may call the next case.